FILED

2005 Feb-01  PM 02:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **NATHANIEL BENJAMIN**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: **CV-04-PT-2340-M** |
| | ) | |
| **HARTFORD CASUALTY** | ) | |
| **INSURANCE COMPANY, et al.**, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This cause comes on to be heard upon defendant Pacific Employers Insurance Company's

Motion for Summary Judgment, filed on November 15, 2004, and defendant Progressive Max

Insurance Company's Motion for Summary Judgment, filed on December 16, 2004.

## FACTS[1] AND PROCEDURAL HISTORY

Plaintiff Nathaniel Benjamin ("Benjamin") is a resident of Georgia.  (Cmpt. ¶ 1).

Defendant Progressive Max Insurance Company ("Progressive") is an Ohio corporation which

does business in Alabama through an agent.  (Cmpt. ¶ 2).  Defendant Hartford Casualty

Insurance Company ("Hartford") is a New Jersey corporation also doing business in Alabama

through an agent.  (Cmpt. ¶ 3).  Defendant Pacific Employers Insurance Company ("Pacific") is

incorporated in Pennsylvania and does business in Alabama through an agent.  (Pacific Brief;

2nd Amd. Cmpt. ¶ 2).

---

[1] The court notes where "facts" appear disputed.

1

On August 28, 2002, Benjamin sustained injuries in a motor vehicle accident while on his job as a driver for Tifton Aluminum ("Tifton"). The accident occurred on U.S. Highway 278 in Cherokee County, Alabama. The operator of the other vehicle involved in the accident, Stephen Shane Hunt ("Hunt"), was killed in the collision. Hunt, and not Benjamin, was at fault in causing the accident. Hunt's estate is not a party to this action, and Benjamin has never obtained a judgment against Hunt or his estate.

The Tifton vehicle operated by Benjamin on August 28, 2002 had in force a policy issued by Pacific containing uninsured motorist coverage. This Pacific policy was issued and delivered to Tifton's affiliated company, Alcoa, Inc., in Pennsylvania.

Additionally, Benjamin was also insured under a Progressive policy, which insured four vehicles. This policy was issued and delivered in Georgia. The Progressive policy provides uninsured motorist benefits in the amount of $25,000.00 per person and $50,000.00 per accident. Benjamin is the named insured on the Progressive policy. Benjamin's wife obtained the policy through Polite-Davis Insurance Agency in Albany, Georgia. (Benjamin Depo., p. 95).

Benjamin testified that he verbally informed an employee of the Polite-Davis Insurance Agency of the accident at issue around 30 to 60 days after the accident, but perhaps sooner. (Benjamin Depo., p. 98). However, Benjamin did not inform the employee that he wanted to make a claim under the Progressive policy. (*Id.* at pp. 99-100). Benjamin contacted an attorney regarding the accident a week after it happened. (*Id.* at pp. 101-02). According to Progressive, it first received written notice of Benjamin's claim for uninsured motorist coverage via a letter dated July 15, 2004, sent by Benjamin's attorney. (Progressive's Exh. 4). Benjamin testified that, two to three weeks prior to the July 15, 2004 letter, he went to the Polite-Davis Insurance

2

Agency to obtain a document showing coverage by the Progressive policy at the time of the accident. (Benjamin Depo., pp. 102-104). However, he did not mention anything about making a claim to the Agency employees. (*Id.* at p. 104). Further, Benjamin stated that he had no personal knowledge of any document asserting a claim being sent to Progressive prior to the July 15, 2004 letter. (*Id.* at p. 105).

The Progressive policy contains the following provision:

<u>GEORGIA MOTOR VEHICLE POLICY</u>

If **you** pay **your** premium on time, **we** will provide the insurance described in this policy.

<u>YOUR DUTIES</u>

**WHAT YOU MUST DO IN CASE OF AN ACCIDENT OR LOSS**

**Notify Us As Soon As Practicable**

If a person or vehicle covered by this policy is involved in an **accident** or **loss** for which this insurance may apply, report it to **us** within twenty-four (24) hours or as soon as practicable after the **accident** by calling **us** at **1-800-274-4499**.

**For coverage to apply under this policy, you or an insured person must promptly report each accident or loss even if an insured person is not at fault. For Uninsured Motorist Coverage to apply, every accident involving an uninsured motor vehicle or underinsured motor vehicle must be reported to us no later than sixty (60) days after the accident occurs.**

**You** should provide **us** with the following **accident** or **loss** information as soon as it is available:
- time;
- place;
- circumstances of the **accident** or **loss** (for example, how the accident happened and weather conditions);
- names and addresses of all persons involved;
- names and addresses of any witnesses; and
- the license plate numbers of the vehicles involved.

> **You** or an insured person should also notify the police within twenty-four (24) hours or as soon as practicable if:
> •     **you** cannot identify the owner or operator of a vehicle involved in the **accident**; or
> •     theft or vandalism has occurred. . . .

(Progressive Exh. 2).[2]

Benjamin filed the present action on July 29, 2004. The original Complaint named

Hartford and Progressive as defendants and contained two counts, one against each defendant.[3]

---

[2] The court notes that the policy requires notice of the "accident" within 60 days, not the making of a claim.

[3] The original Complaint recounts the following facts:

> On or about the 28th day of August, 2002, Nathaniel Benjamin was operating a motor vehicle upon a public road, *to-wit*: U.S. Highway 278 at or near it's (*sic*) intersection with County Road 643 and County Road 111, which is located in Cherokee County, Alabama. At said time and place, plaintiff's vehicle was struck due to the negligence and wantonness of an uninsured driver of another vehicle and Plaintiff was injured and damaged.

(Cmpt. ¶ 5).

Count I states as follows:

> Plaintiff avers that at all times referenced to herein he was an insured under a policy of motor vehicle issued by the defendant, Hartford Casualty Insurance Company, to his employer, Alcoa/Tifton Aluminum Company, whereby said defendant was to provide the plaintiff with protection against bodily injury, death and property damage by uninsured and underinsured motorist (*sic*) for and in consideration of a premium paid to said defendant.

> At the time of the collision made the basis of the plaintiff's Complaint, the aforesaid policy of insurance was in full force and effect and all premiums were paid according to the terms of said policy and that the defendant, Hartford Casualty Insurance Company, has failed to pay for bodily injuries and damages suffered by the plaintiff.

(Cmpt. ¶¶ 7-8). Count II makes identical charges against Progressive. (Cmpt. ¶¶ 10-11). However, Count II indicates that the Progressive insurance policy was issued directly to, and the

Benjamin filed an Amended Complaint[4] on August 30, 2004 and a Second Amended Complaint on September 20, 2004.  The Second Amended Complaint added a third count against Pacific.[5] All three counts sought uninsured motorist benefits from the defendants.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted based upon facts developed through pleadings, discovery, and supplemental affidavits, etc., if together, they show that there is no genuine issue as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party moving for summary judgment bears the initial burden of explaining the basis of his motion.  *Celotex*, 477 U.S. at 323.  "It is never enough [for the movant] simply to state that the non-moving party could not meet their burden at trial."  *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000) (quotation omitted).  The non-moving party then bears the burden of pointing to specific facts demonstrating that there is a genuine issue of fact for trial.  *Celotex*, 477 U.S. at 324.  The non-

_____

premises were paid directly by, Benjamin rather than his employer.  (Cmpt. ¶ 10).

   [4] The Amended Complaint correctly identifies defendant Progressive Max Insurance Company, which had been erroneously designated as Progressive Insurance Company in the original Complaint.  (Amd. Cmpt. ¶ 2).

   [5] Count III makes identical charges against Pacific as are made against Hartford in Count I.

   According to Pacific's Brief in Support of Motion for Summary Judgment, counsel for all parties except Progressive were under the mistaken belief that Hartford was the uninsured motorist carrier for Tifton Aluminum.  However, Pacific asserts, it was later discovered that Pacific's policy was the one carrying uninsured motorist coverage on the vehicle involved in the accident.

5

moving party "must either point to evidence in the record or present additional evidence 'sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.'" *Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir. 1994) (quotation omitted). Summary judgment is required where the non-moving party merely repeats its conclusory allegations, unsupported by evidence showing an issue for trial. *Comer v. City of Palm Bay,* 265 F.3d 1186, 1192 (11th Cir. 2001) (citation omitted).

Summary judgment will not be granted until a reasonable time has been allowed for discovery. *Comer*, 265 F.3d at 1192. Moreover, "[w]hen deciding whether summary judgment is appropriate, all evidence and reasonable factual inferences drawn therefrom are reviewed in a light most favorable to the non-moving party." *Korman v. HBC Florida, Inc.*, 182 F.3d 1291, 1293 (11th Cir. 1999). Finally, the trial court must resolve all reasonable doubts in favor of the non-moving party, although it need not resolve all doubts in a similar fashion. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990).

## ARGUMENTS[6]

## I.    Defendant Pacific Employers Insurance Company's Motion.

Pacific argues that plaintiff's personal uninsured motorist coverage issued by Progressive in Georgia is primary, while Pacific's policy, issued in Pennsylvania, is excess or secondary. Therefore, Pacific contends, plaintiff cannot recover from Pacific unless and until all uninsured motorist coverage issued by Progressive has been exhausted.

### A.    Choice of Law.

---

[6] This section summarizes the arguments made by the parties and does not necessarily reflect the conclusions reached by the court.

Pacific acknowledges that diversity jurisdiction is proper in this case.  Pacific points toward *Ferris v. Jennings,* 851 F.Supp. 418 (M.D. Ala. 1993), and argues that the *Erie* doctrine requires that a federal court sitting under diversity jurisdiction must apply the forum state's conflict of law rules.  Therefore, Pacific maintains, Alabama's choice of law rules control in this case.  *See Ferris*, 851 F.Supp. at 421 (stating, "[w]hen a federal court exercises diversity-of-citizenship jurisdiction, the court is bound to apply the substantive law of the state in which it sits. . . . The *Erie* doctrine extends to choice-of-law questions, so that this court sitting in diversity must apply the forum state's conflict-of-law rules" (citations omitted)).

To apply the appropriate Alabama choice of law rule, Pacific contends, this court must determine whether plaintiff's claims are in the nature of a contract or tort.  In *Ferris*, Pacific points out, the court concluded that an uninsured motorist insurance claim is a contract claim. 851 F.Supp. at 422.  According to Pacific, Alabama's choice of law rules dictate that plaintiff's uninsured motorist claims, sounding in contract, must be decided under the law of the state in which the policies were issued and delivered.  In making such a determination, defendant argues, this court is bound to decide the issue in the manner in which it appears the Alabama Supreme Court would decide it.  *See Shapiro v. Associated Intern. Ins. Co.*, 899 F.2d 1116, 1118 (11th Cir. 1990) (stating, "we must determine which state's substantive law the [highest court of the forum state] would choose to govern interpretation of the . . . policy, as we are 'bound to decide the case the way it appears the state's highest court would'").  Pacific maintains that the Supreme Court of Alabama has addressed the present issue on numerous occasions and consistently held that the law of the state in which the insurance policy was issued and delivered controls.  *See Ailey v. Nationwide Mut. Ins. Co.,* 570 So.2d 598, 599-600 (Ala. 1990) (applying Tennessee law

7

to an uninsured motorist provision contained in an insurance policy issued in Tennessee); *Cotton v. State Farm Mut. Auto. Ins. Co.,* 540 So.2d 1387, 1388 (Ala. 1989) (applying Tennessee law when policy was issued in Tennessee and premium notices were mailed to insured's Tennessee residence).  Therefore, Pacific argues, the Progressive policy must be construed under Georgia law, and the Pacific policy must be construed under Pennsylvania law.

**B.      Georgia Law.**

Pacific points to the Progressive policy, noting that Benjamin is listed as the named insured on the declarations page and uninsured motorist coverage in the amounts of $25,000 per person and $50,000 per accident are indicated.  The declarations page indicates that four vehicles are insured under the Progressive policy.  The premiums for each vehicles' uninsured motorist coverage under the Progressive policy are as follows: (1) Vehicle 1 - $26.00; (2) Vehicle 2 - $20.00; (3) Vehicle 3 - $23.00; (4) Vehicle 4 - $22.00.  Pacific contends that the declarations page makes it clear that Benjamin was, in fact, the premium payer on the Progressive policy.

Because the Progressive policy was issued and delivered in the State of Georgia, Pacific claims, Alabama's choice of law rules dictate that this court apply Georgia law when interpreting that policy.  Pacific maintains that Georgia courts, when determining which of duplicate uninsured motorist policies is primary and which is excess or secondary, have "held that in such a situation the insurance company receiving a premium from the injured party would be responsible for compensating the injured party under his or her policy."  *Travelers Indem. Co. v. Maryland Cas. Co.*, 379 S.E.2d 183, 184 (Ga. App. 1989).

In reaching this result, according to Pacific, the Georgia Court of Appeals in *Travelers* considered a factual scenario strikingly similar to that of Benjamin in the instant case.  In

8

*Travelers*, Welch, who had personal uninsured motorist coverage with Maryland Casualty,[7] was injured in a motor vehicle accident while on the job as a delivery driver for her employer. 379 S.E.2d at 184. Welch's employer also had a policy with Travelers Indemnity which included uninsured motorist coverage. *Id.* Welch made claims for uninsured motorist benefits, and both Travelers and Maryland contended that the other provided the primary uninsured motorist coverage. *Id.* at 184-85.

In deciding that Maryland, as the employee's personal uninsured motorist coverage, was primary, the court noted that "the primary UM carrier is the one that is more 'closely identified' with [the] plaintiff." *Id.* at 185. Pacific points to the following passage from *Travelers* as a summary of Georgia law in this area:

> A stated purpose of the Supreme Court's holding in *Ga. Farm etc. Ins. Co., supra*, was to "simplify such cases in the future." *Id.* 255 Ga. at 167, 336 S.E.2d 237. In order to accomplish this, the Court established the easily ascertainable and risk-measurable criterion of receipt of premium from the injured litigant plaintiff for determining primary UM liability. In a situation such as this where that critical factor is not present, we must look to another or other indicia which similarly will provide a clear rule.
>
> The distinction between a named insured or family-member-named-insured and one who is covered because of merely occupying the named vehicle at the event accomplishes this clarity while also recognizing the legal closeness of identity inherent in the family unit. It, like the factor of premium payment, is a single and uniformly-occurring fact which addresses itself to the relationship of the injured plaintiff to the policy rather than the circumstances of the injury to the policy. This status rather than incident context controls. Although there is no dispute that the injured plaintiff was at the time of injury in the course of her employment, such circumstances are often in dispute and not susceptible of simple resolution. The merely periodic coverage of Welch by the employer's policy makes it more distant than the constant, time-comprehensive coverage afforded to the household member by the mother's policy.

---

[7] "Maryland provided $50,000 UM coverage to Welch as a household family member of its named insured, Welch's mother." 379 S.E.2d at 184.

> Although we certainly cannot take issue with the trial court's observation that employees and not corporations drive automobiles, we reject the court's conclusion that Welch was in effect the corporation, i.e., the named insured, in terms of its UM coverage. *See Hogan v. Mayor etc. of Savannah*, 171 Ga.App. 671, 672(2), 320 S.E.2d 555 (1984); *Anderson v. Ford*, 168 Ga.App. 684, 685, 309 S.E.2d 854 (1983); *Fowler v. U.S. Fidelity & Guaranty Co.*, 133 Ga.App. 842, 843, 212 S.E.2d 486 (1975).

> We conclude that plaintiff Welch was more "closely identified" with her mother's UM coverage provided by Maryland Casualty Company than the employer's UM coverage provided by Travelers Indemnity Company; therefore, Maryland rather than Travelers is the primary UM carrier.

*Id.* at 185-86.

Pacific draws the court's attention to *Georgia Farm Bureau Mutual Insurance Co. v. State Farm Mutual Automobile Insurance Co.*, where the Supreme Court of Georgia held "[t]he insurance company receiving a premium from Hudson[, the injured party,] will be responsible for compensating Hudson under her policy." 336 S.E.2d 237, 238 (Ga. 1985). Pacific also points to *Continental Insurance Co. v. Southern Guaranty Insurance Co.*, 388 S.E.2d 16 (Ga.App. 1989), where the Georgia Court of Appeals addressed a situation in which the plaintiff was injured on the job and was covered by duplicate uninsured motorist insurance policies. In *Continental* the court held that the plaintiff's personal uninsured motorist coverage was primary and the employer's coverage was excess or secondary. 336 S.E.2d at 18. Pacific argues that, in holding that the insured's personal uninsured motorist coverage was primary, the court followed established Georgia precedent, noting that receipt of the premium was dispositive of the primary versus excess issue. The *Continental* court stated:

> ". . . The merely periodic coverage of [Marshall] by [his] employer's policy [with Continental] makes it more distant than the constant, time-comprehensive coverage afforded to [him] by [his own personal] policy [with Southern]."

10

*Id.* (brackets in original).  Pacific also points to the following passage from *Continental*:

> In *Georgia Farm, etc., Ins. Co. v. State Farm, etc., Ins. Co.*, 255 Ga. 166, 336 S.E.2d 237 (1985), the Supreme Court held that the proration of stackable coverage as between uninsured motorist carriers is not viable. Instead, the Supreme Court held that "[t]he insurance company receiving a premium from [the injured insured] will be [initially] responsible for compensating [the insured] under [his] policy." *Georgia Farm, etc., Ins. Co. v. State Farm, etc., Ins. Co., supra* at 167, 336 S.E.2d 237. Subsequent cases have uniformly held that proration is inappropriate and that it is the carrier that receives a premium from the injured insured that bears initial responsibility for compensating him up to its policy limits. *See Lewis v. Atlanta Cas. Co.*, 179 Ga.App. 185, 186(1), 345 S.E.2d 858 (1986); *Ford v. Ga. Farm, etc., Ins. Co.*, 191 Ga.App. 735, 382 S.E.2d 659 (1989). Where receipt of a premium from the injured insured is shown to exist, it is controlling to the exclusion of consideration of any other factors which might be otherwise present. "A stated purpose of the Supreme Court's holding in *Ga. Farm, etc., Ins. Co., supra*, was to 'simplify such cases in the future.' [Cit.] In order to accomplish this, the court established the easily ascertainable and risk-measurable criterion of receipt of premium from the injured [insured] for determining primary [uninsured motorist] liability. [It is only] [i]n a situation ... where that critical factor is not present ... [that] we must look to another or other indicia which similarly will provide a clear rule.... [T]he factor of premium payment ... is a single and uniformly-occurring fact which addresses itself to the relationship of the injured [insured] to the policy rather than the circumstances of the injury to the policy. This status rather than incident context controls." *Travelers Indem. Co. v. Md. Cas. Co.*, 190 Ga.App. 455, 457, 379 S.E.2d 183 (1989).

*Id.* at 17-18 (brackets in original).

Given this Georgia law, Pacific argues, as Benjamin paid the premium for and is the named insured under the Progressive policy, that policy is primary and the Pacific policy is secondary.  According to Pacific, Benjamin must exhaust all the coverage available under the Progressive policy before he is entitled to recover any amount under the Pacific policy.

**C.     Pennsylvania Law.**

Pacific acknowledges that Benjamin, as a permissive user, qualifies as a person entitled to recover under the uninsured motorist coverage in the Pacific policy.  Pacific further

acknowledges that the Pacific policy was in force at the time of the accident, that proper notice

has been received, and that the other driver, Hunt, was at fault and was an uninsured motorist.

However, Pacific disputes the amount of damages claimed by Benjamin and claims that it does

not owe any amount to him unless and until all other available insurance is exhausted.

Concerning the order of priority when multiple insurance policies apply, Pennsylvania

law provides as follows:

> **(a) General rule**.--Where multiple policies apply, payment shall be made in the following order of priority:
> > (1) A policy covering a motor vehicle occupied by the injured person at the time of the accident.
> > (2) A policy covering a motor vehicle not involved in the accident with respect to which the injured person is an insured.
> **(b) Multiple sources of equal priority**.--The insurer against whom a claim is asserted first under the priorities set forth in subsection (a) shall process and pay the claim as if wholly responsible. The insurer is thereafter entitled to recover contribution pro rata from any other insurer for the benefits paid and the costs of processing the claim.

75 Pa. Cons. Stat. Ann. § 1733.  The Superior Court of Pennsylvania applied this statute in *State*

*Farm Insurance Companies v. Ridenour*, 646 A.2d 1188 (Pa. Super. 1994).  In *Ridenour*, the

court addressed a situation in which an employee was injured while riding in her employer's

vehicle.  646 A.2d at 1189.  The court held that the insurer of the employer's vehicle, rather than

insurer of the employee's private vehicle, was primarily liable on the employee's claim for

underinsured motorist benefits.  *Id.* at 1190.

Despite this Pennsylvania law, Pacific submits that the above discussed rules are not

controlling with regard to the order of priority of coverage in this case.  Pacific notes that

Benjamin has no connection to the State of Pennsylvania, being a resident of Georgia.

Additionally, Pacific points out, Benjamin's employer, Tifton, is also a resident of Georgia and

the accident occurred in Alabama.  Although Alabama's choice of law rules state that a federal

court sitting in diversity must look to the state of the place where the contract was made for

purposes of substantive law, Pacific argues, that determination does not prevent a court from

making a further determination of which law to apply to resolve a conflict on duplicate coverage.

Pacific reiterates its earlier argument that under Georgia law the carrier receiving the

premium will be initially responsible.  Pacific asserts that Progressive, which received the

premium for uninsured motorist coverage from Benjamin, should be the primary insurer, and that

Benjamin should not be allowed to recover under the Pacific policy until the Progressive

coverage is exhausted.  According to Pacific, the logic of the Georgia rule is superior to that of

the Pennsylvania rule and, therefore, this court should apply the Georgia rule in the present case.

Pacific contends that uninsured motorist statutes are designed for the protection of the insured

when injury occurs due to the negligence of an uninsured motorist.  Under Geogia law, Pacific

argues, the insured's personal coverage is constant, omnipresent, and provides continuous

coverage.  If additional coverage is available through an employer, Pacific asserts, it is excess

coverage and recoverable only after exhaustion of the insured's primary personal coverage.

## II.    __Plaintiff's Response to Defendant Pacific Employers Insurance Company's Motion.__

Plaintiff acknowledges that his claim as to the Progressive policy is governed by Georgia

law and his claim as to the Pacific policy is governed by Pennsylvania law.  Plaintiff cites to 75

Pa. Cons. Stat. Ann. § 1733., *see supra*, and argues that Pennsylvania law holds that the Pacific

policy is primary and the Progressive policy is secondary.  According to plaintiff, Pennsylvania

Courts have addressed the issue here and stated that the insured must proceed first against the

policy applicable to the vehicle occupied by the insured claimant and then proceed against

13

policies under which the claimant is a named insured. *See State Farm Ins. Companies v. Ridenour,* 646 A.2d 1188, 1190 (Pa.Super. 1994) (finding insurer of employer's vehicle that was involved in accident provided primary underinsured motorist coverage rather than insurer covering claimant's private vehicle that was not involved in accident).

Plaintiff states that it also agrees with the authorities cited by Pacific which stand for the proposition that Georgia law would hold the Progressive policy primary and the Pacific policy secondary. *See Travelers Indem. Co. v. Maryland Cas. Co.,* 379 S.E.2d 183, 185 (Ga. App. 1989) (finding the primary uninsured motorist carrier is the one that is more "closely identified" with plaintiff); *Georgia Farm Bureau Mut. Ins. Co. v. State Farm Mut. Automobile Ins. Co.*, 336 S.E.2d 237 (Ga. 1985) (holding that the insurance company receiving a premium from the injured party provides primary underinsured motorist coverage); *Continental Ins. Co. v. Southern Guar. Ins. Co.*, 388 S.E.2d 16, 18 (Ga. App. 1989) (finding that injured party's private uninsured motorist coverage was primary and employer's coverage was secondary).

Plaintiff argues that applying Alabama law to the contracts would lead to the conclusion that the Pacific policy is primary and the Progressive policy is excess. *See Gaught v. Evans,* 361 So.2d 1027 (Ala. 1978) (finding coverage on vehicle involved in accident was primary while separate coverage of injured party was secondary).

Plaintiff contends that, since Georgia law makes the Progressive policy primary and Pennsylvania law makes the Pacific policy primary, the only reasonable conclusion this Court can make is that both policies are primary. According to plaintiff, Pacific does not cite any law that purports to support its argument that its coverage is excess over the Progressive policy. Plaintiff maintains that the real issue before the court is how to apportion the loss between two

14

primary insurers.[8]

Plaintiff points out that this apportionment issue was addressed by the Pennsylvania Supreme Court in *American Casualty Co. of Reading, Pa. v. PHICO Insurance Co.*, 702 A.2d 1050 (Pa. 1997), where two potential methods of apportionment, the equal share method and the policy limits approach, were examined. The *PHICO* court held that Pennsylvania law follows the minority, equal share method. 702 A.2d at 693. Under the equal shares method, the amount of coverage is irrelevant for determining apportionment and each carrier pays an equal amount up to the limits of its coverage. *Id.* at 686. The policy limit approach[9] "allocates the loss in excess of primary coverages by prorating according to the ratio of the coverage provided by each policy for the same loss to the total coverage provided by all policies."[10] *Id.* at 686-87.

Plaintiff notes that the portion of the Progressive policy dealing with uninsured motorist coverage applies the policy limit approach:

---

[8] At the time of plaintiff's Response, Pacific had not yet provided the court with a copy of its policy. In his Response, plaintiff argues that Alabama courts have long held that "[t]he determination of which insurance coverage is primary and which, if any, is excess or secondary depends on the exact language of the policy." *Nationwide Mut. Ins. Co. v. Hall,* 643 So.2d 551, 558 (Ala. 1994) (citations omitted). Plaintiff notes that Pacific's Motion did not point to any terms of the insurance contract that would support its argument that its coverage is not primary.

[9] Plaintiff asserts that Alabama follows the policy limit approach.

[10] *PHICO* provides an example of how the policy limit approach is applied:

> Here, American Casualty's policy limit is $1,000,000.00, and PHICO's is $10,000,000.00. Thus, application of the policy limits method would result in PHICO being apportioned ten-elevenths of the excess loss ($10,000,000.00/$11,000,000.00), and American Casualty being apportioned one-eleventh of the excess loss ($1,000,000.00/11,000,000.00).

702 A.2d at 687.

OTHER INSURANCE . . .

> If we are responsible for providing payment under this [section of the policy] to an insured person and there is more than one applicable policy of the same priority, we will pay only our share of the damages.  Our share is the proportion that our Limit of Liability bears to the total of all available coverage limits on the same level of priority.

Plaintiff also points to *Nationwide Mutual Insurance Co. v. Hall*, 643 So.2d 551 (Ala. 1994), where the Alabama Supreme Court addressed a dispute between Alfa and Nationwide concerning which policy was primary on a personal injury and wrongful death claim arising from a fire.  643 So.2d at 553-54.  In holding that both carriers were primary, the *Hall* court stated:

> When two or more insurance carriers have primary insurance coverage of the same insurable interest, subject matter, and risk, they share liability in accordance with the proportion that the limits of each policy bear to the total limit of insurance applicable to the loss.

*Id.* at 561 (citations omitted).

Plaintiff contends that both the Pacific and Progressive policies in this case are primary and that both Pennsylvania and Georgia law supports this contention.  Plaintiff further argues that Pennsylvania law holds that an equal share apportionment method should be followed. Additionally, plaintiff points out that the Progressive policy, *see supra*, seems to set forth a policy limits apportionment formula similar to the one espoused in *Hall*.

Plaintiff concludes that he should not be required to exhaust his coverage under the Progressive policy before recovering under the Pacific policy because both policies are of equal priority.  As such, plaintiff maintains, both policies are primary and either the equal shares method (Pennsylvania method) or the policy limits method, contained in the Progressive policy and followed by Alabama, should control the issue.

**III.     Defendant Progressive Max Insurance Company's Response to Defendant Pacific Employers Insurance Company's Motion.**

Progressive agrees with Pacific's position on the choice of law issues in this case.

Progressive acknowledges that under Georgia case law, as a general proposition, the insurance

company receiving the premium would be primary.  However, Progressive contends, all the case

law cited by Pacific on the primacy issue under Georgia law deals with two policies of insurance

that were both written and issued in Georgia.  Therefore, Progressive argues, none of the case

law cited by Pacific addresses the conflict of law issue presented in this case concerning the

primacy of coverage between two policies issued in different states

Progressive also acknowledges that Pacific accurately set out, in general terms,

Pennsylvania's law on primacy of insurance coverage.

First, Progressive addresses the issue of the amount of uninsured motorist coverages

available in this case.  Progressive notes that its policy is a single multi-vehicle policy which

provides $25,000.00 per person/$50,000.00 per accident of uninsured motorist coverage.

According to Progressive, the appellate courts of Georgia have consistently and clearly held that

there can be no stacking of uninsured motorist coverages under a single multi-vehicle policy:

> As a general rule, there can be no stacking or pyramiding of the uninsured
> motorists provisions as to single policy coverage of automobiles.

*Hartford Cas. Ins. Co. v. O'Callaghan*, 335 S.E.2d 407, 408 (Ga. App. 1985) (citations omitted).

Although stacking of multiple policies is allowed, Progressive argues, the Georgia courts have

consistently refused to stack within a single policy as to multiple vehicles covered.  According to

Progressive, its policy is a single multi-vehicle policy and, therefore, under Georgia law, the

coverage available to plaintiff would be $25,000.00 in uninsured motorist benefits.

Progressive states that, under Pennsylvania law, stacking is allowed both under single multi-vehicle policy situations and under single vehicle policies.  The stacking of uninsured and underinsured benefits is addressed in 75 Pa. Cons. Stat. Ann. §1738 as follows:

> (a) Limit for each vehicle.--When more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured. The limits of coverages available under this subchapter for an insured shall be the sum of the limits for each motor vehicle as to which the injured person is an insured.

Progressive notes that in *McGovern v. Erie Insurance Group*, 796 A.2d 343, (Pa. Super. 2002), the Superior Court of Pennsylvania addressed the stacking issue as follows:

> Intra-policy stacking is when more than one vehicle is insured under a single policy of insurance. . . . Inter-policy stacking . . . is the addition of coverages for vehicles insured under different policies of insurance.

796 A.2d at 345.

Therefore, Progressive contends, it is clear that under Pennsylvania law, which must be used to interpret Pacific's policy, plaintiff can stack unlimited numbers of vehicles on said policy for which he would be deemed an insured.  Progressive points out that the declaration page of Pacific's policy shows $1 million in uninsured motorist coverage.[11]

Progressive next addresses the issue of primacy in this case.  According to Progressive, there is no Pennsylvania or Georgia case law that addresses the conflict of law issue presented in this case.  Additionally, Progressive contends, there is no section within the Georgia uninsured motorist statute which addresses the primacy issue present here.  However, Progressive notes, the

---

[11] Progressive notes that, at the time it filed its Response, Pacific had not provided its policy or any information as to how many vehicles are covered under it or how many vehicles plaintiff might be able to stack under Pennsylvania law.

Legislature of Pennsylvania addressed the primacy issue in 75 Pa. Cons. Stat. Ann. §1733, which

states:

> (a) General rule.--Where multiple policies apply, payment shall be made in the
> following order of priority:
>> (1) A policy covering a motor vehicle occupied by the injured person at
>> the time of the accident.
>> (2) A policy covering a motor vehicle not involved in the accident with
>> respect to which the injured person is an insured.

According to Progressive, it should be noted that this provision of the Code of

Pennsylvania makes no distinction in regard to priority of recovery as to whether or not the

policies of insurance at issue were both written in the state of Pennsylvania or if the policies at

issue were written in different states.

Progressive asserts that the conflict of law issue present here has not been addressed

directly by either Pennsylvania or Georgia.  However, Progressive maintains, Pennsylvania law

sets out that the Pacific policy is primary as it was the policy covering the motor vehicle in which

plaintiff was injured.  According to Progressive, Pacific acknowledges all of the above arguments

in its Brief, but then makes "a quantum leap, without any supporting case law," arguing that,

since plaintiff was a resident of Georgia, the Progressive policy should be primary.  Progressive

asserts that the Pennsylvania statute regarding primacy provides clear guidance and, therefore,

should be controlling.  Under this statute, Progressive contends, Pacific's policy is primary and

Progressive's policy is secondary.

In the alternative, Progressive asserts that the uninsured motorist benefits in this case

should be prioritized on a pro rata basis based on Progressive's policy limits of $25,000.00 and

19

Pacific's policy limits of at least $1 million.[12]

## IV.   Defendant Pacific Employers Insurance Company's Reply.

It is Pacific's position that its policy is excess over the Progressive policy or due to be construed under the equal share method with the Progressive policy.  Pacific notes that its policy was issued to Alcoa in Pennsylvania and provides coverage for Alcoa and its subsidiaries/affiliates, including plaintiff's employer, Tifton Aluminum, Inc.  According to Pacific, the parties have agreed that either Georgia or Pennsylvania law applies with regard to Pacific's obligations under the respective uninsured motorist provision.  Pacific has submitted a copy of its policy and separate provisions applicable to the States of Georgia and Pennsylvania.

### A.   Georgia Law.

Pacific asserts that this court should apply Georgia law on the issue of primacy.  Pacific contends this is because its policy insured a vehicle garaged in Georgia, operated for the benefit of a Georgia corporation, and driven by a Georgia resident.

#### 1.   No Punitive Damages Permitted Under Georgia Uninsured Motorist Coverage.

Pacific points to the following Georgia provisions of its policy:

**PUNITIVE DAMAGES EXCLUSION**

This endorsement modifies insurance provided under the following:

UNINSURED MOTORIST COVERAGE

---

[12] Progressive argues that plaintiff may be able to stack additional vehicles under the Pacific policy.  Therefore, the Pacific policy may provide more than $1 million in uninsured motorist coverage.

Progressive also filed a Motion for Summary Judgment in this case.  *See infra.*  This Motion, according to Progressive, makes the primacy issue moot.

UNDERINSURED MOTORIST COVERAGE

The following is added to Exclusion:
This insurance does not apply to punitive or exemplary damages.

(Pacific Exh. B-2, p. 00813).

**GEORGIA UNINSURED MOTORISTS COVERAGE . . .**

With respect to damages resulting from an "accident" with [an uninsured motorist vehicle], we will pay under this coverage only if . . .:
a.      The limit of any applicable liability bonds or policies have been exhausted by judgments or payments; . . .

(*Id.* at p. 00816).

According to Pacific, if the court construes the policy under Georgia law, the punitive damage exclusion applies.  Additionally, Pacific contends, the plaintiff must exhaust all other available coverage prior to recovering under the Pacific policy.  Pacific reiterates its argument that the Georgia rule as stated in *Travelers Indemnity Co. v. Maryland Casualty Co.*, 379 S.E.2d 183 (Ga.App. 1989), is that the uninsured motorist insurer which receives a premium from the injured party is the primary insurer.  Pacific notes that the Georgia rule on primacy is intended to provide constant coverage to the premium payer and to avoid disputes such as the instant one.  Again Pacific argues that, under Georgia law, the Progressive policy is primary, and Pacific is not obligated to plaintiff unless and until he exhausts the limits of the Progressive policy.

> **2.      Plaintiff Failed to Satisfy the Condition Precedent of Obtaining a Judgment Under Georgia Law.**

Pacific asserts that plaintiff must first obtain a judgment against the uninsured motorist before seeking to recover under its policy.  On this issue, Pacific adopts the arguments and authorities put forth by Progressive in its Motion for Summary Judgment.  *See infra.*

21

B. **Pennsylvania Law.**

If the court determines that the Pacific policy is controlled by Pennsylvania law, Pacific argues that the same exclusion for punitive damages would apply as under the Georgia provisions of the policy.  Alternatively, Pacific contends that under the equal share method put forth in plaintiff's response, *see supra*, each carrier would be held equally responsible for payment of damages up to their respective policy limits.

In conclusion, Pacific argues that the court should apply the Georgia rule and hold that the Progressive policy is primary and the Pacific policy is secondary.  This resolution, Pacific urges, is the simplest one and the one that provides the most constant coverage for a premium-paying plaintiff.

V. **Defendant Progressive Max Insurance Company's Motion.**

A. **Choice of Law.**

Although the accident at issue here occurred in Alabama, Progressive asserts that its policy is a Georgia policy issued to a Georgia resident and, therefore, Georgia law applies in determining the rights and obligations of the parties under the contract.  *See Ferris v. Jennings,* 851 F.Supp. 418, 421-22 (M.D. Ala. 1993) (finding that Alaska law rather than Alabama law applied where insurance polices were executed and delivered in Alaska even though accident occurred in Alabama).

B. **Lack of Notice.**

Progressive maintains that plaintiff is barred from recovering uninsured motorist benefits under its policy because he failed to notify Progressive of the accident within 60 days, as required by the policy.  Progressive points to the following provision from its policy:

22

**For coverage to apply under this policy, you or an insured person must promptly report each accident or loss even if an insured person is not at fault.  For Uninsured Motorist Coverage to apply, every accident involving an uninsured motor vehicle or underinsured motor vehicle must be reported to us no later than sixty (60) days after the accident occurs.**

Progressive further asserts that *Manzi v. Cotton States Mutual Insurance Co.,* 531 S.E.2d 164 (Ga. App. 2000), provides clear precedent on this issue.  Progressive notes that, in *Manzi*, the plaintiff was involved in an automobile accident on April 18, 1997.  531 S.E.2d at 165.  The plaintiff served Cotton States, her uninsured motorist carrier, on November 3, 1997.  *Id.*  Cotton States moved for summary judgment, arguing that it had no liability under the policy because the plaintiff failed to notify it of the accident in a timely fashion.  *Id.*  The Cotton States policy provided in part, "[w]e must be notified promptly, but in no event later than 60 days, of how, when and where the accident or loss happened. . . ."  *Id.*  The plaintiff argued that the 60-day period should not rule for uninsured motorist claims until the insured discovers that the tortfeasor did not have insurance.[13]  *Id.*

Progressive points out that the Georgia Court of Appeals affirmed the trial court's grant of summary judgment in Cotton State's favor.  *Id.*  The Court of Appeals found that there are practical and valid reasons for the notice requirement being a condition precedent to coverage.  *Id.* at 167.  The *Manzi* court stated:

> [t]he purpose of notice is to enable the insurer to inform itself promptly concerning the accident, so that it may investigate the circumstances, prepare for a defense, if necessary, or be advised whether it is prudent to settle any claim arising therefrom.

*Id.*  Progressive argues that such considerations apply regardless of whether the insured believes

---

[13] In *Manzi* it was undisputed that Cotton States did not have notice of the accident prior to being served on November 3, 1997.  531 S.E.2d at 165.

other insurance is available. *Id.* Further, Progressive states, there is no requirement that the insurer show prejudice from failure to receive notice where prompt notice was a valid condition to coverage. *Caldwell v. State Farm Fire & Cas. Ins. Co.,* 385 S.E.2d 97, 99 (Ga. App. 1989).

According to Progressive, the testimony here shows that it was not notified of the accident by plaintiff until almost two years after the event.[14] Although plaintiff testified that he believed he mentioned the accident to employees at the Polite-Davis Insurance Agency within 60 days, Progressive argues that independent insurance agents are generally considered agents of the insured, not the insurer. *Southeastern Exp. Systems, Inc. v. Southern Guar. Ins. Co. of Georgia,* 482 S.E.2d 433, 435 (Ga. App. 1997). Progressive notes that, in *Southeastern*, the issue before the court was whether the insured seeking defense and indemnity had failed to provide timely notice of the complaint as required under the policy. 482 S.E.2d at 435. The court held that notice given by the insured to the selling agent was not notice to the insurer. *Id.* at 435-36. Progressive asserts that here the testimony of plaintiff indicates that he simply mentioned the accident to employees of Polite-Davis while he was in the office making a payment. As the accident was mentioned in casual conversation, Progressive argues that no notice of the accident was even given to the selling agent. Plaintiff, according to Progressive, never asserted in any form that he was making any type of claim under the policy. Progressive further contends that plaintiff didn't contact it until two years after the accident. As such, Progressive concludes that plaintiff has failed to satisfy a condition precedent in the policy and is, therefore, barred from obtaining uninsured motorist benefits under the policy.

---

[14] There is at least a question of fact as to whether Progressive or its agent was notified of the <u>accident</u> within 60 days.

**C.      Failure to Obtain Judgment Against Alleged Tortfeasor Hunt.**

It is Progressive's position that, because plaintiff never secured a judgment against the alleged uninsured motorist, Hunt, or his estate, the Georgia uninsured motorist statute bars plaintiff from recovering uninsured motorist benefits as a condition precedent to recovery has not been satisfied.

Progressive asserts that obtaining a judgment against an uninsured motorist is a condition precedent to recovery against an automobile liability carrier under uninsured motorist coverage. *Continental Ins. Co. v. Echols,* 243 S.E.2d 88, 89-90 (Ga. App. 1978). Progressive argues that the Uninsured Motorist Act of Georgia requires, as a condition precedent to a suit against an insurance carrier, that the insured first sue and recover judgment against the uninsured driver, whether known or unknown.[15] *Moss v. Cincinnati Ins. Co.,* 268 S.E.2d 676, 678 (Ga. App. 1980). According to Progressive, an insurer has no duty to accept an insured's demand for payment of a claim prior to judgment being entered against the uninsured motorist. *Allstate Ins. Co. v. McCall*, 305 S.E.2d 413, 414 (Ga. App. 1983).

_____To support its argument that the Uninsured Motorist Act of Georgia is applicable in this case, Progressive points to *Broyles v. Bayless,* 878 F.2d 1400 (11th Cir. 1989), where the court addressed the rights and obligations of the parties with regard to the uninsured motorist provisions of an insurance policy. 878 F.2d at 1401. In *Broyles*, the action was filed in Georgia but the accident occurred, and the policy was issued, in Tennessee. *Id.* Progressive points out that the *Broyles* court, finding that Tennessee law governed the disputed issues of coverage, analyzed the Tennessee uninsured motorist statutes and the case law interpreting them. *Id.* at

_____

[15] Progressive points to § 33-7-11 of the Code of Georgia for this provision.

1402-03.  Progressive also points to *Jamison v. Cooper*, 754 F.2d 1568 (11th Cir. 1985), where the court noted that when "a novel type of remedy is created by statute and certain conditions and limitations are incorporated inextricably as an integral and inherent part of the cause of action itself, [such] conditions and limitations . . . might properly have to be given effect in whatever forum is invoked."  754 F.2d at 1570.  Progressive finally draws the court's attention to *Allstate Ins. Co. v. Clohessy,* 32 F.Supp.2d 1333 (M.D. Fla. 1998).  In *Clohessy*, the court found that Florida law controlled the rights and obligations of the parties arising from a Florida uninsured motorist insurance policy.

Progressive concludes that plaintiff is not entitled to seek or recover uninsured motorist benefits under its policy because plaintiff failed to obtain a judgment against the alleged uninsured motorist tortfeasor or his estate, a condition precedent to a suit such as this one under Georgia law.[16]

## VI.   Plaintiff's Response to Defendant Progressive Max Insurance Company's Motion.

### A.   Plaintiff Provided Notice to Progressive Within the Contractual Time Period.

Plaintiff disputes Progressive's argument that it was not provided with notice of the accident within the time required by the insurance contract.  Plaintiff asserts that both he and his wife, Mamie Benjamin, provided Progressive with timely notice.  Plaintiff points to the affidavit of Mamie Benjamin, in which she testified as follows:

> Within a very few days of the August 28, 2002 wreck, I traveled to the office of Joyce Polite, our Progressive insurance agent.  I advised Ms. Polite that my husband had been involved in an automobile wreck on August 28, 2002 and that

---

[16] Progressive also notes that the two year statute of limitations for a cause of action against the alleged uninsured motorist or his estate has expired and plaintiff is, therefore, barred from seeking such a judgment.

the person at fault was killed.  I expressed to her that I was concerned that my husband would be sued and that I wanted to make sure Progressive would stand behind and defend my husband if he was sued.  I also advised Ms. Polite that we would be making a claim for all benefits due under our automobile insurance policy.  We are both named insureds on the Progressive policy.

The agent provided me with a toll-free 800 number to call.  I called the toll-free number that same day and talked to a female Progressive employee and provided the employee with my Progressive policy number.  I advised this individual about the wreck, provided her with the date of the wreck and told her the other driver was at fault and was killed.  I further told her that my husband was injured and that we wanted to make a claim for all benefits under our policy.  The Progressive employee asked me several questions about the wreck, including where the wreck occurred, what vehicle my husband was driving and the nature of his injuries.  When I advised her that he was driving a company truck, she said that the company's insurance company would handle the claim.  She asked me the identify [of] the insurance carrier for my husband's employer and I told her I did not know.  She asked me the identity of my husband's employer and I gave her that information.  She advised me that we did not need to do anything further with regard to Progressive.  She stated that Progressive would contact our agent and/or my husband's employer if they needed further information.  She thanked me for calling and I hung up.  All of this occurred within days after the wreck of August 28, 2002.

(Mamie Benjamin Affid. ¶¶ 4, 5).  Plaintiff further maintains that he advised his agent of the

wreck within the necessary time period.  Plaintiff points to his own deposition testimony:

> Q:   Up until today, have you ever spoken to anyone at Progressive Max Insurance Company about this accident?
> A:   Yes, sir, within – probably within 60 days I verbally told them that I had been involved in an accident on the job, not in my private owned vehicle.
> Q:   All right.  Who did you have that verbal communication with?
> A:   It was one of those female girls, because it was young girls in there, not trying to be funny, but they have so many running in and out, so, you know, it might be Trena or – I don't know, you know, basically, but I know one of them was in there to take the payment.  It's a family owned business, so.
> Q:   Are you talking about somebody at the agency?
> A:   Yes, sir.
> Q:   Well, let me back up then.  You understand there's a difference between the agent that you deal with and the company with who they write you coverage; correct?

A:    No, sir, I don't really know that much but you just have to have insurance.

. . .

Q:    And it's one of the girls that works there?

A:    Yes, sir.  And I think my wife also told the lady who actually is in charge of writing the policy who owns the agency.

Q:    Who is that?

A:    Her name is Joyce Polite.

Q:    Do you know if your wife talked to her about this?

A:    No, but I'm quite sure she did, because, you know, she was pretty upset about the accident, and she was telling, you know, a lot of people, you know, about what had happened to me.

Q:    What was your reason for – I assume this communication that you're talking about was in person as opposed to over the phone?

A:    Yes, sir.  Yes, sir, I went up there in person because I always take the payments up there for my wife and stuff.

Q:    All right.  Now do you remember when it was that you were in there making this payment?

A:    No, sir, I can't tell you the exact date, but I know it was in the 30 to 60 day time frame, you know, when I went up there.  It might not even been that long.

(Benjamin Depo., pp. 96-98).

According to plaintiff, Georgia law holds that "an insurance company is charged with knowledge of all pertinent facts which have come to the knowledge of its duly authorized agents; and, thus, notice to an agent is notice to the principal. This is implied actual notice." *Shield Ins. Co. v. Kitt,* 237 S.E.2d 515, 517 (Ga. App. 1977), *rev'd on other grounds*, 241 S.E.2d 824 (Ga. 1978).  Therefore, plaintiff asserts, his conversation with his agent was sufficient notice to Progressive of his claim.  Given plaintiff's and Mamie Benjamin's contacts with Progressive and its agents in the days following the accident, plaintiff argues that Progressive's lack of notice argument is without merit.

### B.    Plaintiff Is Not Required to Obtain a Judgment Against the Uninsured Motorist Prior to Recovering from Progressive.

_____Plaintiff opposes Progressive's argument that, in order to collect under the uninsured

28

motorist provisions, he must first obtain a judgment against Hunt.  Plaintiff notes that

Progressive cites to O.C.G.A. § 33-7-11 to support its argument.  Plaintiff asserts that nowhere in

§ 33-7-11 does it require an insured to obtain a judgment against an uninsured motorist before

proceeding against the uninsured motorist carrier.  In fact, plaintiff argues, Georgia courts have

determined that the requirement of obtaining a judgment against the uninsured motorist is a

procedural matter and is governed by the law of the forum state.  *Allstate Ins. Co. v. Duncan*, 462

S.E.2d 638 (Ga. App. 1995) (stating: "When a choice-of-law question arises in a contract action

brought in Georgia, substantive matters such as the validity and construction of the contract are

governed by the substantive law of the state where the contract was made (or is to be performed,

if that is a different state); but procedural and remedial matters are governed by the law of

Georgia, the forum state").

_____Under Alabama's choice of law rule, plaintiff argues, the trial court is obligated to apply

the substantive law of Georgia in its interpretation of Progressive's policy and the procedural law

of the forum state, Alabama.  *See Ex parte Owen,* 437 So.2d 476, 481 (Ala. 1983) (stating that

"Alabama follows the traditional view that a contract is governed as to its nature, obligation, and

validity by the law of the place where it was made, unless the parties intend the law of some

other place to govern, or unless it is to be wholly performed in some other place"); *Harrison v.

Insurance Co. of North America*, 318 So.2d 253, 257 (Ala. 1975) (stating "the general conflict of

laws rule provides that the law of the state wherein the contract was executed is determinative of

the rights and liabilities of the parties to the contract"); *Furst & Thomas v. Sandlin,* 94 So. 740,

742 (Ala. 1922) (stating "the validity of a contract is to be determined by the law of the state in

which it is made").  According to plaintiff, Alabama has no requirement of obtaining a judgment

against an uninsured motorist before making a claim for uninsured motorist benefits.

Plaintiff further argues that, while Georgia law did have a judgment requirement before its 1992 amendments to its uninsured motorist statute, the requirement has been relaxed under the current § 33-7-11.  Plaintiff draws the court's attention to *Daniels v. Johnson,* 509 S.E.2d 41 (Ga. 1998).  Plaintiff asserts that, in *Daniels*, the Georgia Supreme Court addressed the old law of requiring a judgment as a condition precedent to suing an uninsured motorist carrier and noted:

> The legislature enacted OCGA § 33-24-41.1 in 1992 to make meaningful the ability of a claimant to settle with the tortfeasor's insurance carrier while preserving his UM claim.  Prior to its enactment, a UM carrier was entitled to insist on a judgment in excess of the liability policy limits before fixing coverage under its policy.  Therefore, a claimant could not maintain an action against his own UM carrier if he had settled with the tortfeasor's carrier without the agreement of the UM carrier. OCGA § 33-24- 41.1(c) changed this circumstance by expressly providing that UM policies cannot require permission of the UM carrier before a claimant settles with a liability carrier. Thus, the statute eased both the process of plaintiffs' recovering for their injuries and the process of resolving lawsuits. The rule we announce today furthers those goals by looking solely to the face of the policy for the limits available. This rule also has the advantage of allowing the parties to focus on the issue of liability and damages.

*Daniels,* 509 S.E.2d at 43.

Plaintiff maintains that Progressive erroneously relies on Georgia Code 1933 56-407A, which was replaced in 1992 by § 33-7-11.  According to plaintiff, all of the Georgia cases cited by Progressive deal with the repealed statute and not the new uninsured motorist statute, § 33-7-11.  Given these arguments, plaintiff concludes that Progressive's Motion for Summary Judgment is due to be dismissed.

## VII.    Defendant Progressive Max Insurance Company's Reply.

Progressive addresses plaintiff's assertion that Georgia's law indicating that a plaintiff

must obtain a judgment against the tortfeasor to obtain uninsured motorist benefits is now

"relaxed," or "old law."  Progressive acknowledges that the Georgia Uninsured Motorist statute

(O.C.G.A. § 33-7-11) does not explicitly mandate that a plaintiff obtain such a judgment prior to

seeking benefits.  However, Progressive argues, Georgia case law has interpreted a key provision

in the statute to require such a judgment.  Progressive points to *Wilkinson v. Vigilant Ins. Co.*,

224 S.E.2d 167 (Ga. 1976), where the court stated that the injured party must reduce his claims to

a judgment in order to establish the amount he is legally entitled to recover from a uninsured

motorist carrier.  224 S.E.2d. at 167.  The *Wilkinson* court noted that this requirement came from

the Georgia Court of Appeals' interpretation of a clause found in former section 56- 407.1(a) of

the Georgia Code, which stated that insurance policies shall contain "provisions undertaking to

pay the insured all sums which he shall be legally entitled to recover as damages from the owner

or operator of an uninsured motor vehicle." *Id.*[17]  Progressive argues that this statutory language

remains valid and there has been no "repeal" of this language or different interpretation given to

it.  *See Boles v. Hamrick*, 391 S.E.2d 418, 419 (Ga.App. 1990) (stating, "[t]his court has

interpreted the Uninsured Motorist Act to require, as a condition precedent to a suit against the

---

[17] This statutory language is found in the current Georgia Code under O.C.GA. §33-7-11(a)(1) which states:

> No automobile liability policy or motor vehicle liability policy shall be issued or delivered in this state to the owner of such vehicle or shall be issued or delivered by any insurer licensed in this state upon any motor vehicle then principally garaged or principally used in this state unless it contains *an endorsement or provisions undertaking to pay the insured all sums which said insured shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle*, within limits exclusive of interests and costs . . .

(emphasis added).

31

insurance carrier, that the insured first sue and recover a judgment against the uninsured

motorist").[18]

Progressive further contends that plaintiffs reference to, and reliance on, O.C.G.A. § 33-

24-41.1 is misplaced.  According to Progressive, that section, by its terms, specifically addresses

underinsured motorist cases where there is liability insurance and an underinsured carrier.

Progressive argues that this statute allows a claimant to avoid having to reduce, as against a

tortfeasor, a judgment in an amount in excess of policy limits prior to fixing coverage under a

uninsured motorist policy.  Progressive asserts that this law gives a claimant the ability to settle

with a liability carrier and still preserve the right to pursue uninsured motorist benefits.

Additionally, Progressive maintains, the *Daniels* case cited by plaintiff addresses issues regarding

the necessity of exhausting liability limits before proceeding against an uninsured motorist

carrier.  It does not, according to Progressive, address the factual scenario in this case.  *See Kent*

*v. State Farm Mut. Auto. Ins. Co.,* 504 S.E.2d 710 (Ga.App. 1998) (discussing the application of

O.C.G.A. § 33-24-41.1, but also recognizing the "judgment as condition precedent" requirement

---

[18] Progressive also points to *Brown v. State Farm Mut. Auto. Ins. Co.,* 529 S.E.2d 439, 441 (Ga. App. 2000), which cites to *Boles* as good law concerning a similar issue.  *Brown* cites *Boles* as follows:

> It is true that a known motorist is deemed uninsured when he cannot be personally served. *Smith*, 246 Ga. at 52, 268 S.E.2d 632. But, under those circumstances, a plaintiff is not "legally entitled to recover damages from the uninsured motorist" unless he or she serves the defendant by publication and reduces his or her claim against the defendant to a judgment. *Id.* at 51, 268 S.E.2d 632; *Boles v. Hamrick*, 194 Ga.App. 595, 596, 391 S.E.2d 418 (1990).

*Brown,* 529 S.E.2d at 441.

as valid law).[19]

Progressive reasserts its argument that the "judgment condition precedent" requirement under Georgia law applies in this case because the rights and obligations of a party under an insurance contract are determined by the law of the State where the contract was made. *Ferris v. Jennings*, 851 F.Supp. 418, 422 (M.D. Ala. 1993). Progressive argues that the court must give deference to the rights and obligations of contract parties as defined by the law of the State where the contract was issued. Progressive draws the courts attention to *Cambridge Mutual Fire Insurance Co. v. City of Claxton, Ga.,* 720 F.2d 1230 (11th Cir. 1983). In *Cambridge*, the court addressed the issue of whether federal law or state law determined the commencement of a lawsuit as it pertained to the statue of limitations. 720 F.2d at 1231-32. The *Cambridge* court

---

[19] In *Kent*, the court stated:

> Pursuant to the language of OCGA § 33-24-41.1, the Kents defeated their ability to recover damages from their underinsured motorist carrier, State Farm, by voluntarily dismissing with prejudice their claims against the defendant driver rather than merely executing a limited liability release against her. OCGA § 33-24-41.1 provides that the injured party may execute a limited release of the tortfeasor and its insurer, relieving them from all liability, and "still retain the right to pursue his own insurer for other available coverage," here, underinsured motorist coverage. *Rodgers v. St. Paul Fire &c. Ins. Co.*, 228 Ga.App. 499, 500(1), 492 S.E.2d 268 (1997). However, the injured party must establish legal liability of the defendant driver of an underinsured vehicle before recovery is allowed under the driver's uninsured motorist coverage. OCGA § 33-7-11(a)(1). Legal liability is defined as the securing of a judgment against the underinsured motorist in order to collect underinsured/uninsured motorist benefits from the carrier. *Continental Ins. Co. v. Echols*, 145 Ga.App. 112, 113, 243 S.E.2d 88 (1978). "A judgment obtained against the uninsured motorist is a condition precedent to recovery against an automobile liability carrier under the provisions of uninsured motorist coverage. [Cit.]" *Id.* at 113, 243 S.E.2d 88. *See also Boles v. Hamrick*, 194 Ga.App. 595, 596, 391 S.E.2d 418 (1990).

504 S.E.2d at 712-13.

noted that a federal court sitting in diversity jurisdiction must apply the controlling substantive

law of the State, including the State's statute of limitations. *Id.* at 1232. The court stated:

> [T]here is simply no reason why, in the absence of a controlling federal rule, an
> action based on state law which concededly would be barred in the state courts by
> the state statute of limitations should proceed through litigation to judgment in
> federal court solely because of the fortuity that there is diversity of citizenship
> between the litigants.

*Id.* at 1233. In the present case, Progressive argues, the Georgia uninsured motorist statute and

its interpretations control. Therefore, Progressive concludes, plaintiff is barred from recovering

in the present case from an uninsured motorist carrier because he has not secured a judgment

against the alleged tortfeasor.

## CONCLUSIONS OF THE COURT

There is apparently no dispute that Alabama (conflict) (choice) of law rules apply. Nor is

there any apparent dispute that these claims are contract claims. Nor that Georgia law applies to

the Progressive policy and Pennsylvania law to the Pacific policy.

It seems further apparent that under Pennsylvania law the Pacific policy is, by statute,

primary. It also appears, although perhaps not so clearly, that under Georgia law the Progressive

policy provides primary coverage.[20]

It further seems apparent to this court that there is at least a question of fact as to whether

Progressive received timely notice of the accident. The Progressive policy does not state that

there must be a timely <u>claim</u>, only timely notice of the <u>accident</u>. There is at least a question of

fact as to whether such timely notice was given to an agent of Progressive.

---

[20] The cited cases so suggesting may all be cases in which both policies were issued in
Georgia.

34

This court further concludes that, since both policies provide primary coverage, the Alabama Supreme Court would hold that the "policy limits" rule applies to the apportioning of the loss between the two insurers.  This court so concludes because, while the Pennsylvania courts appear to have adopted the "equal share" minority rule, it is not clear that Georgia has adopted either rule and this court is of the opinion that, under such circumstances, Alabama would apply its own rule (the majority rule) enumerated in *Nationwide Mutual Insurance Co. v. Hall,* 643 So.2d 551 (Ala. 1994).[21]

A perhaps more difficult issue is whether Georgia law would require that the plaintiff obtain a judgment against the uninsured motorist before there can be recovery against Progressive.  Further, in this regard, whether the Alabama Supreme Court would enforce such a requirement.  Further, what the effect of such a requirement and the possible avoidance of liability by Progressive would have on the claim against Pacific.  The cases of *Ward v. Allstate Insurance Co.,* 595 S.E.2d 97 (Ga. App. 2004), and *Soley v. State Farm Mutual Automobile Insurance Co.*, 600 S.E.2d 707 (Ga. App. 2004) would appear to (suggest) (hold) that an action against the uninsured motorist is not necessary to establish liability against an uninsured motorist carrier in the absence of "a legal barrier unrelated to any procedural misstep of the injured party." *Soley*, 600 S.E.2d at 708.  It appears that an injured party only has to establish that he is legally entitled to recover from the uninsured motorist.  *Ward*, 595 S.E.2d at 604-05.  *See also Georgia Farm Bureau Mutual Insurance Co. v. Williams,* 597 S.E.2d 430, 431 (Ga. App. 2004) (stating that, "generally, to recover under uninsured motorist provisions in Georgia, the injured party has

---

[21] If any party can advise the court of controlling Georgia case(s) applying the "policy limits" rule, the court will reconsider.

to prove two things: (1) that the tortfeasor was uninsured; and (2) that the tortfeasor was liable"). The court will require further specific briefing on these issues.

**Summary**

**A**

The court concludes and declares that:

(1) Both the Pacific and the Progressive policies provide primary coverage.

(2) The "policy limits" majority rule is applicable to the apportionment of the loss.

**B**

There may be a question of fact as to whether the plaintiff gave timely notice of the accident to an agent of Progressive.  The parties will advise the court whether:

(1) There is a factual issue as to whether Polite-Davis Insurance Agency was, at the pertinent time, an agent of Progressive and, if so, what evidence on this issue is before the court.

(2) There is a factual dispute as to whether the plaintiff notified Polite-Davis Insurance Agency of the <u>accident</u> and, if so, what evidence on this issue is before the court.

**C**

The parties will fully brief the issues related to whether the plaintiff was required to obtain a judgment against the uninsured motorist before proceeding against Progressive.

The parties may also suggest other issues which should, as the result of these pending motions, be presently decided by the court.

The parties should address the significance, if any, of *Nationwide Mutual Insurance Co. v. West*, 807 A.2d 916 (Pa. Super. 2002).

The parties will submit the additional specific, but inclusive, briefs within 15 days.

36

Responses may be submitted within ten days.

This 1st of February, 2005.

_____
**ROBERT B. PROPST**
**SENIOR UNITED STATES DISTRICT JUDGE**